UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-20399-BLOOM/Otazo-Reyes

BENJAMIN ARTHUR BOWEN,

    Plaintiff,

v.

XINGZHAO LI,

    Defendant.
_____/

**ORDER ON MOTION FOR FINAL DEFAULT JUDGMENT**

**THIS CAUSE** is before the Court on Plaintiff's Motion for Entry of Final Default Judgment, ECF No. [22] ("Motion"), against Defendant XINGZHAO LI a/k/a AIDA TOP a/k/a YANG LEI LEI ("Defendant"). Defendant did not file a Response. The Court has carefully reviewed the Motion, the record, and is otherwise fully advised.

    **I.**    **BACKGROUND**

Plaintiff filed an Amended Complaint on April 4, 2023, Amend. Compl., ECF No. [14], in which he alleges the following:

On April 15, 2022, Plaintiff and Defendant communicated through Facebook, an online social media and social networking service. *Id.* ¶ 10. Defendant represented that she was successfully engaged in investing in cryptocurrency and that her aunt was a prosperous cryptocurrency trading expert who managed an analyst group at Grayscale Investments, a legitimate third-party digital currency asset management company. *Id.* ¶¶ 11, 12.[1] Defendant

---

[1] Cryptocurrency is a digital asset which may be used as a medium of exchange and for which generation or ownership records are supported through a distributed ledger technology that relies on cryptography. *Id.* ¶ 22.

represented that, if Plaintiff were to join a margin trading platform called foundrypro.net ("Foundrypro"), Defendant would use sophisticated algorithms designed and implemented by Defendant's aunt to execute cryptocurrency trades in order to earn Plaintiff a profit. *Id.* ¶ 13. Neither Defendant nor Defendant's aunt had a relationship with Grayscale Investments. *Id.* ¶ 15.

Based on these representations, Plaintiff joined Foundrypro on May 17, 2022 and began executing margin trades on that platform on Defendant's advice. *Id.* ¶¶ 17, 19. Over the course of Plaintiff and Defendant's relationship, Plaintiff invested 2,215,118 units of "Tether" (USDT), a form of cryptocurrency known as stablecoin that is pegged to the value of the U.S. Dollar. *Id.* ¶¶ 23, 24. From April 15, 2022 through the end of October, 2022, Defendant communicated with Plaintiff via SMS, WhatsApp, telephone calls, and email. *Id.* ¶ 16. Foundrypro featured a dashboard that displayed illusory investment gains which, together with Defendant's representations, encouraged Plaintiff to continue "investing" in Foundrypro. *Id.* ¶ 20.

To facilitate Plaintiff's investments on Foundrypro, Plaintiff executed eight USDT transactions between May 17, 2022 and October 28, 2022, sending USDT from his "Crypto.com account" to a first "virtual wallet address" controlled by Defendant (Wallet Address 0xba109c48264785070e35963592540324e8612d09, "Defendant Wallet 1"). *Id.* ¶ 24. On August 30, 2022, Plaintiff executed a cryptocurrency transaction from his "Coinbase account" to another virtual wallet address controlled by Defendant (Wallet Address 0xb285ca276c96c47b546d0ca88f77905fadc8eb3a, "Defendant Wallet 3"). *Id.* ¶ 25. Between September 18, 2022 and October 2, 2022, Plaintiff sent four cryptocurrency transactions from Plaintiff's Crypto.com account to another virtual wallet address controlled by Defendant (Wallet Address: 0x9800322ca41c512265a0b14c49a834c4a2c448aa, "Defendant Wallet 2"). *Id.* ¶ 26. Plaintiff was able to withdraw 22,150 USDT from Foundrypro, which encouraged Plaintiff to

execute further transactions. *Id.* ¶ 27. During that same time period, Defendant transferred Plaintiff's USDT to a series of virtual wallets, depositing the USDT at receiver addresses at four purportedly legitimate online cryptocurrency exchanges. *Id.* ¶¶ 26, 28. As a result, Defendant wrongly deprived Plaintiff of USDT that Plaintiff values at $2,215,118.00. *Id.* ¶ 29.

The Amended Complaint asserts claims for Racketeering, in violation of 18 U.S.C. § 1964 (RICO) (Count I), Conversion (Count II), Unjust Enrichment (Count III), Breach of Fiduciary Duty (Count IV), and Imposition of a Constructive Trust (Count V). Amend. Compl. ¶¶ 36-75.

On May 9, 2023, Plaintiff filed a Motion for Clerk's Entry of Default as to Defendant, ECF No. [19], and the Clerk entered default against Defendant the same day pursuant to Rule 55(a) of the Federal Rules of Civil Procedure for failure to plead or otherwise defend, ECF No. [20]. Plaintiff now moves the Court to grant Final Default Judgment against Defendant.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). Before entering a default judgment for damages, "the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a . . . sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the Complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232

n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . . no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) ("following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

### III.   DISCUSSION

#### A.   *Final Default Judgment*

#### 1.   Count I - Racketeering

A plaintiff asserting a RICO claim must establish "(1) a violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) causation." *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1066 (11th Cir. 2017). Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to "conduct, or participate in the conduct of, the affairs of such an enterprise through a pattern of racketeering activity." *Avirgan v. Hull*, 932 F.2d 1572, 1578 (11th Cir. 1991). To establish a violation of § 1962(c), a plaintiff must establish that a defendant: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (quotation marks omitted).

"To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original). Predicate acts include wire fraud. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing 18 U.S.C. § 1961(1)). "A plaintiff must put forward

4

enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020).

To allege criminal conduct of a continuing nature, a plaintiff must allege "a series of related predicates extending over a substantial period of time" or "the threat of continuity." *Id.* at 1216 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989)) (emphasis omitted). The Eleventh Circuit measures a "substantial period of time" in years, not weeks. *Id.* (citing *Jackson*, 372 F.3d at 1267). To show a "threat of continuity," a plaintiff must allege either that the alleged acts were part of the defendant's "regular way of doing business" or that the acts "threatened repetition in the future." *Id.* (citing *Jackson*, 372 F.3d at 1267). To show alleged acts are part of the defendant's regular way of doing business, a plaintiff may allege that the defendant operated as part of a long-term organization that exists for criminal purposes. *H.J. Inc.*, 492 U.S. at 242. To show threatened repetition of the acts in the future, the Supreme Court has explained that "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of a long-term racketeering activity[.]" *Id.*[2]

The Amended Complaint fails adequately to allege predicate acts that demonstrate criminal conduct of a continuing nature. Defendant allegedly deprived Plaintiff of USDT valued at $2,215,118.00 after Defendant induced Plaintiff with promises of investment gains to transfer USDT to Defendant from his Crypto.com and Coinbase accounts. Amend. Compl. ¶¶ 22-29. The Amended Complaint organizes those into three sets: (1) from May 17, 2022 to October 28, 2022;

---

[2] The Supreme Court suggested that a statement by a "hoodlum" to a neighborhood's storekeepers that he is selling "insurance" that requires monthly "premium" payment to cover storekeepers against window breakage—i.e., an implicit threat made to extort money from storekeepers—may qualify as a threat of continuing racketeering activity. *Id.* As the Supreme Court explained, in such a circumstance, "[t]hough the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity." *Id.*

(2) on August 30, 2022; (3) in late September 2022 and early October 2022. Those occurrences are within a six-month period. The Eleventh Circuit has held that alleging nine months of racketeering activity that is narrow in scope is insufficient to sustain a RICO violation. *Jackson*, 372 F.3d at 1266-67. In *Jackson*, the plaintiff alleged that alleged mail and wire fraud violated extended "over a substantial period of time," from April 22, 1997 to sometime in January 1998. Noting the Supreme Court's warning that predicate acts that extend "over a few weeks or months" and that threaten no future criminal conduct do not satisfy the RICO statute's continuity requirement, *Jackson* explained that the Eleventh Circuit had previously determined that a mail fraud scheme lasting approximately six months had not occurred over a substantial period of time. *Id.* at 1266. Moreover, *Jackson* observed that holding was consistent with other Circuits' determinations that allegations of schemes lasting less than a year do not establish the requisite continuity. *Id.* at 1266-67 (citing cases). Accordingly, absent an allegation of a threat of continued criminal conduct by Defendant, the scheme alleged here has not occurred over a "substantial period of time." *Cisneros*, 972 F.3d at 1219.

Moreover, an allegation of a "threat of continuity" is absent here. Plaintiff has failed to allege that the acts were part of the defendant's "regular way of doing business." *See, e.g.*, *Cisneros*, at 972 F.3d at 1219 ("Cisneros has alleged no concrete facts to support her sweeping, conclusory allegation that wire fraud is part of Petland Kennesaw's regular way of doing business -- indeed, she has not specifically pointed us to a single other person whom Petland Kennesaw allegedly defrauded"). The Amended Complaint alleges that Defendants and other unidentified parties operate a sophisticated global internet cryptocurrency fraud and conversion scheme. Amend. Comp. ¶¶ 1, 37. Defendant recommended that Plaintiff invest in Foundrypro, and Plaintiff joined Foundrypro, executing a series of margin trades. Amend. Compl. ¶¶ 13, 15, 17, 19.

Foundrypro had a fraudulent dashboard that displayed increasing illusory gains in the value of Plaintiff's cryptocurrency, and, through three sets of transactions that spanned from May 17, 2022 through October 28, 2022, Defendant stole Plaintiff's cryptocurrency, transferring it to multiple wallets and depositing that cryptocurrency at four purportedly legitimate cryptocurrency exchanges. *Id.* ¶¶ 20, 21, 23-27.

Defendant's numerous communications, the elaborate nature of the cryptocurrency transactions, and the computer programming expertise implied by the existence of the fraudulent Foundrypro dashboard suggest the existence of a group of individuals acting in concert to employ technology to unlawfully deprive victims of cryptocurrency. However, the allegations do not establish that such an organization is a "long-term" one. Indeed, none of the allegations indicate the duration of Defendant's criminal enterprise. Nor has Plaintiff adequately alleged "a distinct threat of a long-term racketeering activity." The Amended Complaint is devoid of any specific statements by Defendant that suggest a continuing threat of racketeering activity (for instance, statements via emails that Defendant or her purported aunt are helping others to make investment gains through cryptocurrency trading).

The Amended Complaint states that Defendants and other unidentified parties operate a sophisticated global internet cryptocurrency fraud and conversion scheme and that Defendant will continue her fraudulent enterprise if left unchallenged, Amend. Compl. ¶¶ 1, 32, 37. However, the Court must not accept as true such conclusory allegations. Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff relies on *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), to argue that the RICO statute must be read broadly to allow Plaintiff to recover under Count I. ECF No. [22] at 4, 5; *see also Sedima*, 473 U.S. at 496 (stating that the RICO statute requires no more than alleging each element—assuming the plaintiff has standing and the enterprise affects interstate commerce). However, *Sedima* stated that RICO is to be read broadly in deciding that the Second Circuit erroneously attempted to limit its application by imposing an amorphous standing requirement that was absent from the statute's language. *Id.* at 497-500. *Sedima* did not state that any number of independently indictable predicate acts alone establish a pattern of racketeering activity; rather, *Sedima* states the opposite. *See id.* at 497 n.14 (explaining that the state requires more than one racketeering act a "factor of *continuity plus relationship*" for those acts to establish a pattern) (citing S. Rep. No. 91-617, p. 158 (1969) (emphasis added)). Moreover, in explaining that the RICO statute requires "no more than" alleging the elements of a RICO violation, the Supreme Court explained simply that the requirements to sue under the statute are provided for expressly in the language of that statute. *Id.* at 496-97 (explaining that RICO does not require alleging a "racketeering injury" since that element is not in the language of the statute). *Sedima* does not support that a rote recitation of the elements of RICO suffices to establish liability. As the foregoing demonstrates, Plaintiff has not adequately alleged a pattern of racketeering activity.

**2. Count II - Conversion**

As an initial matter, the Court determines which law applies to the claim of Conversion. A federal district court exercising supplemental jurisdiction over state law claims applies the choice-of-law rules of the state in which it sits, in this case Florida. *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (citing *McCoy v. Iberdrola*

*Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("Federal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." (citations omitted)); *Future Metals LLC v. Ruggiero*, No. 21-CIV-60114, 2021 WL 5853896, at *14 (S.D. Fla. Oct. 26, 2021) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)), *report and recommendation adopted*, No. 21-CV-60114-RAR, 2021 WL 5834258 (S.D. Fla. Dec. 8, 2021). The Eleventh Circuit has explained that, at least as to tort claims, the Florida Supreme Court applies the "most significant relationship" test set forth in Section 145 of the Restatement (Second) of Conflict of Laws ("the Restatement"). *Trumpet Vine Invs., N.V. v. Union Cap. Partners I, Inc.*, 92 F.3d 1110, 1115-16 (11th Cir. 1996). Under the "most significant relationship" test, "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *Id.* at 1116 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). Section 6 of the Restatement states

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>     (a) the needs of the interstate and international systems,
>     (b) the relevant policies of the forum,
>     (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>     (d) the protection of justified expectations,
>     (e) the basic policies underlying the particular field of law,
>     (f) certainty, predictability and uniformity of result, and
>     (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). Under Section 145 of the Restatement,

> Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the

place where the relationship, if any, between the parties is centered," and "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

Plaintiff was a citizen of California, where he was located when Defendant converted his cryptocurrency. Amend. Compl. ¶ 6. Therefore, because the injury occurred in California, California law applies to Plaintiff's conversion claim.

The elements of conversion under California law are: (1) the plaintiff had ownership or right to the property at the time it was converted, (2) the defendant wrongfully took the property or interfered with the owner's ability to use it, and (3) the plaintiff suffered damages as a result. *See Hodges v. Cnty. of Placer*, 41 Cal. App. 5th 537, 551 (2019).

Here, Plaintiff alleges he owned $2,215,118.00 in value of USDT. Amend. Comp. ¶¶ 22, 23. Defendant wrongfully took Plaintiff's USDT by transferring that USDT to four purportedly legitimate cryptocurrency exchanges. *See id.* ¶ 28. As a result, Plaintiff suffered losses. *See id.* ¶¶ 29, 31. Plaintiff has therefore adequately alleged Count II.

### 3. Count III – Unjust Enrichment

In California, the elements of unjust enrichment are that "(1) plaintiffs 'conferred a benefit upon' defendant; (2) defendant 'knowingly accepted and retained the benefits'; (3) defendant 'has been unjustly enriched by the benefit conferred by' plaintiffs; and (4) 'it would [be] unjust and unconscionable to permit [defendant] to be enriched at [plaintiffs'] expense.'" *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 2008) (alterations in original); *see also Ajaxo Inc. v. E*Trade Fin. Corp.*, 187 Cal. App. 4th 1295, 1305 (Cal. Ct. App. 2010); *Lyles v. Sangadeo-Patel*, 225 Cal. App. 4th 759, 769 (Cal. Ct. App. 2014).

Here, the Amended Complaint alleges that Defendant induced Plaintiff to invest using the cryptocurrency margin trading platform, Foundrypro, which featured a dashboard that falsely

depicted illusory gains on Plaintiff's investment. In reliance on Defendant's representations and the dashboard, Plaintiff effected three sets of cryptocurrency transactions in 2022, which Defendant proceeded to transfer through a series of virtual cryptocurrency wallets and ultimately to addresses at four cryptocurrency exchanges. Plaintiff conferred a benefit upon Defendant in the form of USDT, Defendant knowingly accepted and retained the USDT given that Defendant encouraged Plaintiff to invest using Foundrypro, Defendant has necessarily been unjustly enriched by taking possession of Plaintiff's USDT, and accordingly it would be unjust and unconscionable for Defendant to keep that property. *See* Amend Compl. 55-62. Defendant is liable on Plaintiff's claim for Unjust Enrichment.

   **4. Count IV – Breach of Fiduciary Duty**

Under California Law, a party claiming breach of fiduciary duty must prove the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. *Knox v. Dean*, 205 Cal. App. 4th 417, 432 (Cal. Ct. App. 2012). A fiduciary relation is:

> Any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent.

*Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (Cal. Ct. App. 2003) (quoting *Herbert v. Lankershim*, 9 Ca. 2d 409, 483 (1937)) (internal quotation marks omitted).

Here, the Amended Complaint alleges that, based on Defendant's representations of having superior knowledge in cryptocurrency investing, and based on Defendant's invitations to Plaintiff to invest with Defendant's advice, Plaintiff reposed his trust and confidence in Defendant to guide him in Defendant's proposed investments, which established a fiduciary duty. Amend. Comp. ¶ 64. Defendant breached that duty by transferring Plaintiff's USDT to addresses in cryptocurrency

exchanges other than Foundrypro. *See id.* ¶ 67. As a result, Plaintiff suffered damages. *See id.* ¶ 29, 31. Plaintiff has thus adequately pled Breach of Fiduciary Duty.

### 5. Count V - Imposition of a Constructive Trust

Under California law, a constructive trust is an involuntary equitable trust created by operation of law as a remedy to compel the transfer of property from the person wrongfully holding it to the rightful owner. *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1485 (Cal. Ct. App 2014), *as modified*, (May 27, 2014). California law recognizes constructive trust and disgorgement as remedies for breach of fiduciary duty. "In an action for constructive trust one must plead facts constituting the cause of action, such as fraud, breach of fiduciary duty, etc., and specifically identifiable property." *Ehret v. Ichioka*, 247 Cal. App. 2d 637, 642, 55 Cal. Rptr. 869, 873 (Ct. App. 1967); *see also Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (Cal. Ct. App. 1996) (explaining that a constructive trust may be based on breach of fiduciary duty). As the Court has determined Plaintiff adequately alleges a Breach of Fiduciary Duty, a constructive trust and the disgorgement are warranted.

Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants on Counts II, III, IV and V.

### B. Plaintiff's Requested Relief

### 1. Damages and Disgorgement of Property

According to Plaintiff's Declaration, Defendant converted 2,215,118 USDT from Plaintiff. *See* Pl.'s Decl. ¶ 4; Am. Compl. ¶ 23. Plaintiff's assertion is supported by an investigator's analysis that traced Plaintiff's cryptocurrency by accounting for the pertinent transactions by using the transactions' transaction hashes. Pl.'s Decl. ¶ 5. Transaction hashes are a unique string of characters given to every transaction verified and added to the "blockchain," a distributed ledger technology that relies on cryptography. Amend. Compl. ¶ 22. Such transaction hashes may be

Case No. 23-cv-20399-BLOOM/Otazo-Reyes

found in a transaction's details and, as the Amended Complaint supports, are publicly discoverable. *Id.*

According to the Amended Complaint, the following are the pertinent cryptocurrency transactions between Plaintiff and Defendant.

| Date & Time (UTC) | Amount | Transaction Hash |
|---|---|---|
| May 17, 2022, 10:28:29 PM | 5,313 USDT | 0x2e088eb1ce38070574f14b77d0f126c41eb3febb0ddd73dbd64577cd34830caf |
| May 26, 2022, 8:21:37 PM | 147,457 USDT | 0x4945c7e66395da05a4690f29b1182d74f0c19c2ca597b689de083fc3d2472b1e |
| May 27, 2022, 7:21:02 PM | 144,647 USDT | 0x16c71d45471f94d4b3fc85f95163c5a2c733417542b741565525cb13bc227400 |
| Jun 28, 2022, 10:55:51 PM | 196,162 USDT | 0xf34059b3cbff0d761ab6f0f5da8fc9843634b45eef8a8300aaee165c39b5d438 |
| Jun 29, 2022, 11:24:30 PM | 199,975 USDT | 0x9850e8adc580f81271c8e5a1f945413e5d55e2fc78e5ba54748924bc14c7d40d |
| Jul 1, 2022, 7:43:04 AM | 143,308 USDT | 0xa204dfbe12e87e02356b6459d7ae66a03a31629b3a4bbf2b9cee066a3dc2face |
| Aug 30, 2022, 8:30:53 PM | 194,861 USDT | 0x06f71a2e278090c1d86f3cae71972d943cdcf5d18ba8bcde4394956c0ffb60dc |
| Oct 28, 2022, 4:06:59 PM | 99,859 USDT | 0x458d7947ef73244b2bd70d303da3dbddc78ec138ccce9c0b02dcb05210edefb8 |
| **Sent to Wallet Address: 0xba109c48264785070e35963592540324e8612d09** | | |

| Date & Time (UTC) | Amount | Transaction Hash |
|---|---|---|
| Aug 30, 2022, 10:27:44 PM | 499,987 USDC | 0x7b66045360eb855bfa2290af3680b91f7eee64461413cf5bbbed948fb94ebdaa |
| **Sent to Wallet Address: 0xb285ca276c96c47b546d0ca88f77905fadc8eb3a** | | |

| Date & Time (UTC) | Amount | Transaction Hash |
|---|---|---|
| Sep 18, 2022, 3:58:23 AM | 194,861 USDT | 0xf3c50bac42f8d7c478093313e0560ae0393c38115b7116c9dd5eaaf1c0cfc4a4 |
| Sep 19, 2022, 5:35:11 AM | 189,990 USDT | 0xf6de8f37cff27717ac5e2d519b896fd364e7949a393ae6fc3d9e5e13c88d106b |
| Oct 1, 2022, 7:23:47 PM | 190,000 USDT | 0xe3e16266b128644f57c27ddb80acb7a1092c959065464357ebf5bb081f405d76 |
| Oct 2, 2022, 12:39:11 AM | 8,990 USDT | 0xa5ffe5252e088f8519ec34a6d3e6f377e4c7c139d06a9d1e0f0d2c07e5b914a3 |
| **Sent to Wallet Address: 0x9800322ca41c512265a0b14c49a834c4a2c448aa** | | |

Amend. Compl. ¶¶ 24-28.

The Court calculates the sum of those transactions as 2,215,410 USDT. The Amended Complaint also alleges that Plaintiff was able to withdraw 22,150 USDT from Foundrypro. *Id.* ¶ 27. The allegations thus suggest that Plaintiff was deprived of 2,193,260 USDT. That latter number does not match Plaintiff's damages number. Moreover, the evidence shows that USDT, although pegged to the value of the U.S. dollar, varies from the dollar by small but significant

values. For example, the value of USDT varied between May 2015 and May 2023 by as much as $0.0088 or more. ECF No. [22-1] at 7-8. Such a variance may affect the damages number in this case, particularly since the transactions occurred on different dates. Accordingly, the amount of damages are not able to be computed on the paper record. Plaintiff must provide a fulsome calculation in order for the Court to enter final default judgment on Plaintiff's damages.

### 2. Permanent Injunction

Plaintiff seeks a permanent injunction against Defendant under RICO. ECF No. [22] at 12-13. Because the Court does not find that Defendant is liable under RICO, Plaintiff's request for a permanent injunction on this ground is denied.

Plaintiff also seeks a permanent injunction on grounds of public policy. *Id.* at 12 n.5 (citing *inter alia Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016)). Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) he has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). In this case, Plaintiff seeks damages for $2,215,118.00 in USDT that Plaintiff lost when Defendant effectuated a series of unauthorized cryptocurrency transactions. Plaintiff alleges no other harms in the Complaint; nor does he allege his injury cannot be compensated by money damages, that damages cannot be ascertained with any degree of certainty, or that the injury to him is of a continuing nature. Monetary damages would compensate Plaintiff for his loss, which is reducible to a monetary value in U.S. dollars. Accordingly, Plaintiff has an adequate remedy at law, so a permanent injunction is unavailable in this action.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [22]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Plaintiff shall file evidence that supports it damages calculation that is consistent with this Order by **July 25, 2023**.

3. In accordance with Federal Rule of Civil Procedure 58, a separate final judgment will be entered following Plaintiff's submission of his damages calculation.

**DONE AND ORDERED** in chambers at Miami, Florida, on July 18, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record